AGUSTÍN BLANCO GÉIGEL, ET AL., Appellants, *v.* REGISTRAR OF PROPERTY OF SAN JUAN, Respondent.

No. 1241. Submitted March 1, 1949.—Decided May 24, 1949.

*Gabriel de la Haba* for appellants.   The Registrar appeared by
   brief.

MR. JUSTICE SNYDER delivered the opinion of the Court.

In 1938 Agustín Blanco and his wife, Ana María Ces-
tero, acquired a house and lot, located on Estado Street in
Miramar, Santurce, which was recorded in their name and
for which, according to the deed, they paid $8,000.   In 1948
they executed a deed, in which Ana María and María Teresa
Blanco Cestero joined, whereby Blanco and his wife conveyed
the property to Ana María and María Teresa in considera-
tion of the constitution by the transferees of a life annuity
of $600 a year on the property in favor of Blanco and his
wife during the lives of both the transferors.   The latter
deed recited that the property was then worth $12,000.

The Registrar refused to record the 1948 deed.   He took
the position that although it purported to be a contract of
life annuity under §§ 1702–08, Civil Code, 1930 ed., the deed
constituted a gift or in any event a transfer for a price less
than its fair value as defined in § 1 of Act No. 303, Laws
of Puerto Rico, 1946;   that § 12 of Act No. 99, Laws of
Puerto Rico, 1925, as amended by § 2 of Act No. 189, Laws
of Puerto Rico, 1948, provides that no registrar shall record
such a deed unless there is presented a receipt of the Treas-
urer that the tax on the transfer has been paid;   and there-
fore that he would not record the deed in the absence of a
certificate by the Treasurer that the tax had been paid or
that the transaction was exempt from taxation.   The four
parties to the deed filed this appeal from the ruling of the
Registrar.

Citing *Torres* v. *The Registrar of Property*, 20
P.R.R. 258, and various commentators, the appellants argue
that by virtue of §§ 1702–08 of the Civil Code this deed estab-

lished an onerous life annuity and not an onerous or any other type of gift as contemplated by § 560 of the Civil Code. But we are not concerned here with the differences between an onerous life annuity and onerous and other types of gifts under the civil law. The Legislature sought in Act No. 303 of 1946, as amended by Act No. 432, Laws of Puerto Rico, 1947, and by Act No. 189 of 1948, to impose a tax on all transactions in which property is transferred by inheritance or for less than its fair value. Consequently, for purposes of the taxes imposed therein, this taxing statute defines as "gifts" transactions some of which were never so classified under the civil law. That becomes evident when we examine the following provision of Act No. 303:

"Section 1.—*Definitions.*—As used in this Act:

"(*a*) The term 'gift' includes the purely gratuitous, the onerous and the remunerative gift, as defined by the Civil Code of Puerto Rico.

"When a property is transferred for less than its fair value, either in money or money's worth, or by exchange, the excess of the fair value of said property over the consideration in money or money's worth, or thing for which said property was exchanged, shall be considered a gift, and shall be included in computing the total gifts made during the year.

"The transfer described in the preceding paragraph of this section is also a gift when such transfer is made through the performance or liquidation by one party of the liability or obligation of a second party towards a third, or by any other means.

"Gift also includes the remission in whole or in part of a debt or other obligation.

"The amount of any ordinary life or endowment insurance policy is also a gift when the person paying the premiums on such policy is not the same person who will receive the proceeds of the policy upon the liquidation thereof.

"Gift also includes any transfer in trust (*fideicomiso*).

"A gift shall be such both when made directly and indirectly.

"All transfers affected by inheritance, by will or intestacy is [sic] also a gift.

"There shall not be considered to be gifts: (1) uncollectable debts, (2) the cancellation of uncollectable debts, and (3) lottery prizes paid to the purchaser of the lottery ticket."

Section 1(a) deliberately breaks with the traditional definition of a "gift" under the civil law. And it is so broad in its terminology that it makes taxable transactions whereby transfers of property are effected by inheritance or for less than its fair value whether those transactions as a matter of civil law are gifts as defined by § 560 of the Civil Code, are contracts of life annuity under §§ 1702–08 of the Civil Code, or are transfers of property of a number of other types provided for by our substantive law.

The only problem before us at the moment therefore is whether the deed sought to be recorded showed on its face that property may have been transferred for less than its value, thereby bringing into play § 12 of Act No. 99, Laws of Puerto Rico, 1925, as amended by § 2 of Act No. 189 of 1948, which requires production of a tax receipt before recordation may be had.[1]

■■ We agree with the appellants that a contract of life annuity is aleatory and that its value to the transferee is uncertain since the period during which he must pay the annuity is undetermined. And if the annuity is higher than the rental value of the property transferred in exchange for the annuity, the transaction might turn out to be a losing rather than a gainful proposition for the debtors if the transferor lives for a long period. Under those circumstances, it could be argued with some force that such a contract of life annuity does not on its face fall within the definition of a "gift" found in § 1(a) of Act No. 303.

But here the deed recites that the house and lot, located in

---

[1] Section 12, as amended, provides that ". . . no registrar shall record in the registry under his charge any gift inter vivos unless upon presentation of the receipt issued by the Treasurer of Puerto Rico, showing that the tax on said gift has been paid . . . ". What constitutes a "gift" for purposes of § 12 is of course determined by the definition thereof found in § 1(a) of Act No. 303.

an urban area, is valued at $12,000, whereas the annuity is only $600 a year, or 5 per cent a year on the value of the property. That sum is, for present purposes at least, *prima facie* less than the rental value of the property. Cf. Act No. 5, Laws of Puerto Rico, 1933, Sp.Sess., providing that 6 per cent constitutes the legal rate of interest and also providing that 8 per cent may be charged by special agreement for loans in excess of $3,000. Consequently, although the debtors might be receiving less than they had anticipated if the transferors happened to live beyond their life expectancy, at the time of execution of the deed they apparently received property for less than its fair value. That is to say, provided the annuity is less than the revenue that the value of the thing transferred could produce, one who receives property subject to payment of an annuity cannot be heard to say he received nothing whatsoever of value merely because of the possibility that the recipient of the annuity may live longer than expected. Such longevity may hindsight reduce the present value of the property to the transferee; it cannot possibly eliminate altogether such value to the transferee or turn it into a loss for him.

This case becomes clearer if a more obvious example is given. To agree with the appellants would mean that even if the annuity was $5 a month the Registrar would be required to record the deed without a tax receipt. We cannot agree that the Legislature left this obvious loophole in a comprehensive statute which undertakes to tax all transfers for less than fair value and which uses the sweeping language embodied in § 1(a) of Act No. 303.

■■ The appellants correctly argue that it is not the function of the Registrar to determine the value of real property. But here the Registrar is not undertaking to fix the value of the house and lot. He is accepting the figure of $12,000 recited in the deed as the value of the property; but he is complying with the duty placed on him by § 12 of Act No. 99 of 1925, as amended by § 2 of Act No. 189 of

1948, to refuse to record a deed unless accompanied by a certificate from the Treasurer where on its face the deed appears to provide for a transfer of real property for less than its fair value.

We are aware of the difficulties that have been placed in the way of recording transactions by § 1(a) of Act No. 303 of 1946 and § 2 of Act No. 189 of 1948. But the government has the right to protect the public revenue and to lay down reasonable conditions under which it will permit property owners to utilize the registry system which the government provides. The ruling of the Registrar does not necessarily mean that any tax is due. It merely means that on the face of the deed the transaction requires a certificate from the Treasurer that the tax has been paid or that none is due. The way is open to the appellants to settle that question with the Treasurer administratively or in the courts. Once that is done, they will be entitled to recordation of the deed.[2]

The ruling of the Registrar will be affirmed.

Mr. Justice Todd, Jr., dissented.

---

[2] The appellants assert in their brief that the debtors are daughters of the transferors. The 1948 deed does not so recite. The appellants rely on the surnames of the transferees to support this contention. That would not ordinarily be sufficient. However, even if we accept this statement of relationship between the parties, our conclusion remains unaltered. Indeed, if anything, the position of the Registrar that this may be a taxable transfer as defined in § 1(a) of Act No. 303 of 1946 is strengthened by the fact that it was made by parents to their daughters.